UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

YASSIN ABDIRAHMAN YUSUF,

      Plaintiff,

v.

HEATHER WEYKER, *in her individual capacity as a St. Paul Police Officer*; JOHN BANDEMER, *in his individual and official capacities as a St. Paul Police Sergeant*; JOHN DOES 3-4, *in their individual and official capacities as supervisory members of the St. Paul Police Department*; THE CITY OF ST. PAUL,

      Defendants.

Case No. 16cv1012 (JNE/TNL)
ORDER

### I.    INTRODUCTION

Plaintiff Yassin Abdirahman Yusuf alleges violations of his constitutional rights in an investigation that led to his indictment by a federal grand jury and his subsequent arrest, a trial on some of the counts in which he was charged, his conviction on one count, and the setting aside of that conviction. He sues Defendants Heather Weyker, a police officer for the St. Paul Police Department in Minnesota; John Bandemer, a St. Paul Police Department sergeant who is alleged to have been Weyker's supervisor; John Does 3-4, who are allegedly supervisory St. Paul police officers; and the City of St. Paul ("St. Paul"). Weyker and Bandemer move to dismiss Yusuf's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and on absolute and qualified immunity grounds. Dkt. No. 41. St. Paul moves on behalf of the City of St. Paul and John Does 3-4 for judgment on the pleadings. Dkt. No. 47.

The investigation at the core of Yusuf's civil complaint targeted a suspected venture involving the sex-trafficking of minor girls across Minnesota, Tennessee, and Ohio. The

investigation resulted in the criminal indictment of thirty people, mostly Somali, in the Middle District of Tennessee in 2010-2011 ("Tennessee Case").  Yusuf alleges that Weyker and Bandemer fabricated evidence about him and others throughout the investigation, resulting in a tainted indictment that was further corrupted by Weyker's continuing deception, and causing his arrest and detention without probable cause.

Nineteen of Yusuf's co-defendants in the Tennessee Case bring separate suits similarly alleging constitutional violations, and a twenty-first person brings another related civil suit.  The parties agreed to coordinated briefing on the Defendants' motions.  The Court assumes familiarity with its fuller opinion in one of the related cases, *Osman v. Weyker, et al.*, No. 16cv908 ("Osman Opinion") (filed simultaneously herewith).  Yusuf, coordinating with the other plaintiffs represented by his counsel, opposed the motions.  *See* GBBS Pls.' Opp. to St. Paul Mot., Dkt. No. 52; GBBS Pls.' Opp. to DOJ Mot. to Dismiss ("GBBS DOJ Opp."), Dkt. No. 55.

The Court held a hearing on the motions on May 3, 2017, and now grants both motions.[1]

## II. APPLICABLE STANDARDS

A motion to dismiss or a motion for judgment on the pleadings is appropriately granted "only when there is no dispute as to any material facts and the moving party is entitled to judgment as a [m]atter of law." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (citation omitted).  To survive a Rule 12 motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *Haney v. Portfolio Recovery Assocs., LLC*, 837 F.3d 918, 924 (8th Cir. 2016), *as amended* (Dec. 27, 2016).  *See also* Osman Op. 3-4.

---

[1] The United States also filed a Motion to Substitute and Dismiss, which was mooted by stipulation as recognized by the April 12, 2017 Order Permitting the GBBS Plaintiffs to Amend Complaints.  Dkt. No. 62.  Pursuant to that order, Yusuf filed a Second Amended Complaint [Dkt. No. 63] ("SAC"), which is thus the operative complaint subject to these Rule 12 motions.

## III. ALLEGATIONS

Most of the allegations are similar to those alleged by Osman and summarized and analyzed in the Court's order in that case. *See, e.g.*, Osman Op. 4-8. The Court briefly recounts some allegations in Yusuf's Second Amended Complaint and some facts gleaned from the Tennessee Case record.[2]

Yusuf was arrested on November 8, 2010, after he was charged in a First Superseding Indictment ("FSI") dated November 3, 2010. SAC ¶ 15. The indictment charged him with two counts of participation in a sex-trafficking conspiracy in violation of 18 U.S.C. § 1591(a) (Counts 1 and 2); one count of recruiting Jane Doe Two, a minor, to engage in commercial sex in violation of 18 U.S.C. § 1591(a) (Count 12); and one count of attempt to recruit Jane Doe Two to engage in commercial sex (Count 13). SAC ¶ 15. In addition, Count 18 charged Yusuf with conspiring to commit credit card fraud in violation of 18 U.S.C. § 1029(a). FSI ¶ 117, *United States v. Yusuf*, No. 3:10cr260, Dkt. No. 36 (M.D. Tenn. Nov. 3, 2010). A Second Superseding Indictment was filed in May 2011 charging Yusuf in these same counts. *See* SAC ¶ 16; *Yusuf*, No. 3:10cr260, Dkt. No. 591.

The sex-trafficking-related counts as against Yusuf exclusively involved the supposed witness-victim Jane Doe Two. SAC ¶ 17. "Jane Doe Two was the centerpiece of Weyker's and Bandemer's fabricated case against Yusuf . . . ." SAC ¶ 18. Weyker was the lead investigator on the case, and Bandemer was her supervisor in the St. Paul Police Department. SAC ¶ 14. The indictment included allegations about a trip that Yusuf took with Jane Doe Two and others in May 2007 from Minneapolis to Rochester, Minnesota, allegedly "for the purpose of charging persons money to engage in sex with Jane Doe Two." SAC ¶ 19. "There was never any such

---

[2] The Court may take judicial notice of public documents in the Tennessee Case record. *Greenman*, 787 F.3d at 887.

3

conspiracy and Yusuf never engaged in any attempt to have Jane Doe Two engage in commercial sex. . . . Fabricated evidence formed the basis of this false allegation against Yusuf." SAC ¶ 20. The indictment also alleged that Jane Doe Two engaged in commercial sex in connection with a road trip that she, Yusuf, and others took from Minneapolis to Nashville, Tennessee, in late April 2009. *See* SAC ¶¶ 22-26; FSI ¶¶ 43-45. "Fabricated evidence formed the basis of this false allegation against Yusuf," SAC ¶ 27, including false evidence regarding Jane Doe Two's age, SAC ¶¶ 26, 35.

In early 2012, as the parties in the Tennessee Case prepared for trial, the district court granted a motion to sever some of the counts, including Count 18, to be tried later. *United States v. Yusuf*, No. 3:10cr260, Dkt. No. 1395 (M.D. Tenn. Feb. 16, 2012).

In April 2012, a criminal trial began in which Yusuf was tried on the four sex-trafficking-related counts in which he was charged. *See* SAC ¶ 37; *United States v. Adan*, 913 F. Supp. 2d 555, 560 (M.D. Tenn. 2012). The jury acquitted him on Counts 2, 12, and 13, but found him guilty on Count 1. *See* SAC ¶ 38; *Adan*, 913 F. Supp. 2d at 560.[3] He "would never have been indicted on sex trafficking charges," nor would he have ever been detained, nor convicted on Count 1, "had Weyker and Bandemer not fabricated evidence, cultivated and manipulated Jane Doe Two, manufactured testimony and misled federal authorities." SAC ¶¶ 39-41. On December 19, 2012, "the district court granted Yusuf's [Federal Rule of Criminal Procedure 29] motion for judgment of acquittal on his sex trafficking conviction and conditionally granted a new trial on Jane Doe Two's age issue and the Government's violation of discovery orders." SAC ¶ 53 (citing *Adan*, 913 F. Supp. 2d at 583, 591).

---

[3] "The jury credited Jane Doe Two's testimony that she . . . traveled to Rochester with Yusuf for sex trafficking." *United States v. Mohamud*, No. 3:10cr260, 2013 WL 1935506, at *8 (M.D. Tenn. May 9, 2013).

4

After the district court's order granting the Rule 29 motion, Yusuf moved for release from custody, and in February 2013, he was released on conditions. SAC ¶¶ 54-55. "The district court's decision, however, was reversed on appeal [] wherein the United States argued that the salacious nature of the charges warranted continued detention." SAC ¶ 56. The appellate court noted that Yusuf had "rebutted the presumption of detention" but found that the relevant factors weighed overall in favor of detention. *United States v. Fahra*, No. 13-5296, Dkt. No. 61-1, at 6-8 (6th Cir. Dec. 18, 2013) (submitted in this case at DOJ Reply Ex. BB). These factors included evidence at the trial and testimony at the detention hearings, the fact that the jury convicted Yusuf on Count 1, his "significant criminal history," and "his post-release conduct—including numerous failed drug screens and another arrest." *Id.* at 7. "Consequently, on December 18, 2013, [] Yusuf was falsely imprisoned again." SAC ¶ 56. He then remained in custody until March 2016, when the Sixth Circuit decided an appeal of the order granting Yusuf's Rule 29 motion. *See* SAC ¶ 57; *see also United States v. Fahra*, 643 Fed. Appx. 480 (6th Cir. Mar. 2, 2016). Yusuf was released from custody on March 4, 2016. SAC ¶ 59.[4]

Like Osman, Yusuf alleges that the charges of a wide-ranging sex-trafficking conspiracy were baseless and that Weyker fabricated "the overwhelming majority of material evidence supporting his indictment for sex trafficking," SAC ¶ 29; that Weyker manipulated and coerced Jane Doe witnesses, including Jane Doe Two, into lying, SAC ¶¶ 28, 31, 33, 39-41; that Weyker was motivated to falsify evidence by a desire for professional success, *see* SAC ¶ 14; and that indications of Weyker's fabrication included her rough notes, SAC ¶¶ 34, 42-43, questions

---

[4] The record reflects that Yusuf was released on conditions on that date. *United States v. Yusuf*, No. 3:10cr260, Dkt. No. 3789 (M.D. Tenn. Mar. 4, 2016). On March 8, 2016, the government moved to dismiss all remaining charges against all remaining defendants, and the next day, the district court granted the motion and vacated all terms and conditions of supervised release that had been imposed. *See id.* at Dkt. Nos. 3796, 3798.

5

surrounding Jane Doe Two's age, SAC ¶¶ 22, 26, questions surrounding Jane Doe Two's April 2009 trip to Nashville, SAC ¶¶ 25, 34, and the district court's grant of Yusuf's Rule 29 motion, SAC ¶ 53. Also like Osman, Yusuf's complaint cites to remarks about Weyker and the case by the district and appellate courts in the Tennessee Case. SAC ¶¶ 22, 25, 30 n.1, 34, 42, 44-45.

## IV. SUMMARY OF ARGUMENTS

The Court summarizes the parties' arguments to provide context. The arguments are similar to those described in the Osman Opinion, *see* Osman Opp. 8-10, but because Yusuf is represented by different counsel than Osman, the opposition briefing was not identical.

Defendants contend there are myriad reasons to dismiss this action. *See* DOJ Br., Dkt. No. 43. Weyker and Bandemer argue that all claims brought against them pursuant to 42 U.S.C. § 1983 must be dismissed as a matter of law because they were acting as federal agents at the time of Yusuf's indictment, arrest, and detention, and federal actors are not subject to § 1983 liability. They then contend that the federal analog to § 1983 under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), is not available to Yusuf or the other plaintiffs. Weyker and Bandemer further assert that even if Yusuf might theoretically be able to bring a § 1983 or *Bivens* cause of action, his complaint still fails for multiple reasons. To the extent the claims are based on Weyker's testimony in court, they are barred by absolute immunity. The claims are otherwise barred by qualified immunity because the facts alleged do not make out a violation of a constitutional right that was clearly established at the time of the alleged violation. Bandemer argues that Yusuf has not plausibly alleged that he, as Weyker's supervisor, violated Osman's rights. Bandemer and Weyker further argue that the plaintiffs cannot bring claims for violations of due process for two reasons. First, they are barred by *Parratt v. Taylor*, 451 U.S. 527 (1981), in that the criminal defendants had adequate post-

6

deprivation process.  Second, the recent Supreme Court decision in *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), and other binding precedent hold that Yusuf's allegations sound, if at all, in the Fourth Amendment.  *See also* DOJ Reply, Dkt. No. 59.  And he has not stated a claim for a Fourth Amendment violation because he has not plausibly alleged that there was not arguable probable cause to arrest him.  Finally, Weyker and Bandemer assert that some plaintiffs—including Yusuf—were indicted for not just allegedly fabricated sex-trafficking-related crimes but also for separate crimes; they contend that these plaintiffs' complaints do not plausibly allege a lack of probable cause for the indictments on these separate counts; and they argue that qualified immunity thus bars a Fourth Amendment cause of action for all of these plaintiffs.  Separately, St. Paul argues that Yusuf fails to state a claim against the City of St. Paul or John Does 3-4 because he has not plausibly alleged supervisory liability or municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).  *See* St. Paul Br., Dkt. No. 49.  Additional arguments were mooted by stipulation.  *See* Dkt. No. 62.

Yusuf argues that he has plausibly alleged that Weyker and Bandemer were acting under color of state law, such that § 1983 is the proper vehicle for his claims, GBBS Opp. 26-38, but that they have also adequately pleaded a *Bivens* cause of action in the alternative, *id.* at 61-65.  He contends that he has adequately pleaded violations of his constitutional rights sufficient to overcome a qualified immunity defense at the pleadings stage based on five Eighth Circuit cases involving fabrication-of-evidence claims: *Wilson v. Lawrence County*, 260 F.3d 946 (8th Cir. 2001); *Moran v. Clarke* (*Moran I*), 296 F.3d 638 (8th Cir. 2002) (*en banc*); *Moran v. Clarke* (*Moran II*), 359 F.3d 1058 (8th Cir. 2004); *Livers v. Schenck*, 700 F.3d 340 (8th Cir. 2012); *Winslow v. Smith*, 696 F.3d 716 (8th Cir. 2012); and *White v. Smith*, 696 F.3d 740 (8th Cir. 2012).  GBBS DOJ Opp. 39-55.  Yusuf concludes that consistent with this Eighth Circuit

7

precedent, he has plausibly alleged substantive due process claims as well as Fourth Amendment claims for arrest and detention without probable cause. GBBS DOJ Opp. 51-54; *see also id.* at 58. Yusuf argues that *Parratt* does not bar his substantive due process claims. GBBS DOJ Opp. 55-56. In addition, he contends that he has plausibly alleged personal liability for Bandemer, not just Weyker, because Bandemer has fair notice as to the claims against him and Yusuf's complaint clearly alleges that Weyker and Bandemer "were in this together." GBBS DOJ Opp. 56-57. Finally, Yusuf rebuffs Defendants' arguments that absolute immunity bars his case, insisting that neither he nor any of the other plaintiffs primarily rely on any Defendant's in-court testimony. GBBS DOJ Opp. 59-61. In response to St. Paul's arguments, Yusuf argues that Bandemer and Weyker were acting as state actors even though at some point each was federally deputized, and that he has plausibly alleged that Weyker's supervisors were at least reckless in supervising her. *See* GBBS Pls.' Opp. to St. Paul Mot.

V. **LEGAL ANALYSIS**

As explained fully in the Osman Opinion, pursuant to *Manuel v. City of Joliet*, 137 S. Ct. 911 (Mar. 21, 2017), Yusuf's claims sound, if at all, in the Fourth Amendment, not the Fifth or Fourteenth. *See* Osman Op. 11-13; *see also id.* at 17-22. His complaint is that "[b]ut for the false testimony and other erroneous evidence falsely manufactured by Weyker and Bandemer, no probable cause existed to detain or otherwise restrict Yusuf's liberty." SAC ¶ 1. In other words, he complains "that a form of legal process resulted in pretrial detention unsupported by probable cause." *Manuel*, 137 S. Ct. at 919. So "the right allegedly infringed lies in the Fourth Amendment." *Id.* A "constitutional division of labor" applies to claims similar to Yusuf's. *Id.* at 920 n.8 (referring to *Gerstein v. Pugh*, 420 U.S. 103 (1975), and *Albright v. Oliver*, 510 U.S. 266 (1994)). Thus, because he challenges his pretrial detention, his claim are under the Fourth

Amendment. In contrast, if he had been convicted and were to challenge the sufficiency of the evidence supporting that conviction, his claim would then be analyzed under the Due Process Clause of the Fourteenth Amendment because "once a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support *both a conviction and any ensuing incarceration* does so under the Due Process Clause . . . ." *Id.* (emphasis added) (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979), and *Thompson v. Louisville*, 362 U.S. 199, 204 (1960)). Although Yusuf did stand trial on four counts and was convicted on Count 1, that conviction was set aside by the district court's grant of his Rule 29 motion on the grounds of variance and his motion for a new trial. *See Adan*, 913 F. Supp. 2d at 570, 579, 590. He then was held pending a new trial. *See* DOJ Reply Ex. BB 1, 3. Because Yusuf's conviction was set aside, he challenges pretrial detention, not incarceration imposed pursuant to a sentence, and his claims still fall under the Fourth Amendment. *Compare with Jackson*, 443 U.S. at 316 (describing the due process guarantee "that no person shall be made to *suffer the onus of a criminal conviction* except upon sufficient proof") (emphasis added), *and Thompson*, 362 U.S. at 206 (holding that it violates due process "to convict and punish a man without evidence of his guilt"). Yusuf's claims for substantive due process violations under the Fifth or Fourteenth Amendments therefore fail. *See Manuel*, 137 S. Ct. at 919-20; *Albright*, 510 U.S. at 271 (plurality opinion).[5]

---

[5] Yusuf, who submitted an opposition brief before having the benefit of the *Manuel* decision, attempted to distinguish *Albright* based on a pre-*Manuel* interpretation of that case in *Moran II*, 359 F.3d at 1061. GBBS DOJ Opp. 41 n.146. In *Moran II*, the Eighth Circuit rejected a reading of *Albright* that would have foreclosed a substantive due process claim, reasoning that "'[i]nstead of simply allowing a weakly supported prosecution to proceed,' Moran asserts that Appellants engaged in a 'purposeful police conspiracy to manufacture . . . false evidence.'" 359 F.3d at 1061 (quoting *Moran I*, 296 F.3d at 647). The *Manuel* Court clearly interpreted *Albright* as requiring challenges to pretrial detention to be brought under the Fourth Amendment. *See*

Under the Fourth Amendment analysis, the Court must decide whether Yusuf plausibly alleges that the Defendants violated his right to be free from unreasonable seizure by arresting and detaining him without arguable probable cause, based on fabricated evidence.[6]

To evaluate whether a person's Fourth Amendment right has been violated by an arrest pursuant to a warrant that lacked probable cause, the court applies the analysis set out in *Franks v. Delaware*, 438 U.S. 154 (1978). *See Hawkins v. Gage Cty.*, 759 F.3d 951, 958-59 (8th Cir. 2014); *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101, 105 (1st Cir. 2013). Thus, the court considers whether there were deliberately or recklessly false statements made in support of a finding of probable cause and whether those statements were necessary to the finding of probable cause. *See Franks*, 438 U.S. at 156; *Williams v. City of Alexander*, 772 F.3d 1307, 1311 (8th Cir. 2014). The court also considers whether material information was omitted with the intent to mislead or with reckless disregard as to whether the omission was misleading. *See Williams*, 772 F.3d at 1312; *Hawkins*, 759 F.3d at 959. If, setting aside the false statements (or adding in the omitted information), there was no probable cause to arrest, then the arrest violated the Fourth Amendment. *See Williams*, 772 F.3d at 1312-13; *Hawkins*, 759 F.3d at 958-59; *Hernandez-Cuevas*, 723 F.3d at 105. Probable cause "exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Greenman*, 787 F.3d at 888 (citation omitted).

Where a plaintiff alleges that she was arrested without probable cause and the defendant asserts the qualified immunity defense, courts ask whether there was "*arguable* probable cause to

---

*Manuel*, 137 S. Ct. at 918. The Court follows the Supreme Court's interpretation of *Albright* in *Manuel* rather than the Eighth Circuit's older reading of *Albright*.

[6] Because § 1983 and *Bivens* claims are analyzed similarly, the Court does not reach the question of whether Yusuf's claim should have been brought under § 1983 or *Bivens*. *See* Osman Op. 13-17.

10

arrest." *Stewart v. Wagner*, 836 F.3d 978, 984 (8th Cir. 2016) (citing *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015)) (applying this standard to a Fourth Amendment claim for detention based on allegedly false and incomplete information in a probable cause statement). "[T]he issue for immunity purposes is not probable cause in fact but arguable probable cause, that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." *New*, 787 F.3d at 899. "It is clearly established that the Fourth Amendment requires a *truthful factual showing* sufficient to constitute probable cause before an arrest warrant can issue." *Peterson v. City of Plymouth*, 60 F.3d 469, 477 (8th Cir. 1995) (emphasis added) (citation omitted).

### a. Analysis of Yusuf's Claim Under the Fourth Amendment

In considering whether Yusuf plausibly alleges a Fourth Amendment violation, the Court disregards mere conclusory statements, focuses on well-pleaded factual allegations and accepts them as true, and applies its judicial experience and common sense. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The Court also properly considers the Tennessee Case court record in assessing the pleadings. *See, e.g.*, *Greenman*, 787 F.3d at 887.

Yusuf's core allegations are very similar to Osman's, including the ample citations to comments by the Tennessee Case district court and a related appellate decision. In the Osman Opinion, the Court examines several orders and memoranda by the district court and two separate Sixth Circuit Court of Appeals opinions concerning the Tennessee Case, some of which both Osman and Yusuf cite. *See* Osman Op. 25-33. For instance, similar to Osman's allegations that the jury and district court acquitted nine of her co-defendants after the Spring 2012 trial, Yusuf alleges that the jury acquitted him on three counts and that the district court acquitted[7] him on a fourth count after trial. *See* SAC ¶¶ 38, 53. Like Osman, he cites repeatedly to the district

---

[7] The Court uses the word "acquittal" for consistency with the Tennessee Case opinions and the pleadings but has some reservations about it. *See* Osman Op. 23-25.

court's post-trial order on the Rule 29 motions. *See* SAC ¶¶ 42, 45, 53 (citing *Adan*, 913 F. Supp. 2d 555 (M.D. Tenn. 2012)). The Osman Opinion discusses the cited documents in detail, including specifically several footnotes referencing Weyker that the district court injected into its order granting the Rule 29 motions; a pretrial memorandum at Dkt. No. 1392 concerning photographic show-ups conducted by Weyker; a July 31, 2012 detention hearing; and the Sixth Circuit opinion affirming the district court's post-trial acquittals of Yusuf and two of his co-defendants, *United States v. Fahra*, 643 Fed. Appx. 480 (6th Cir. 2016). In Osman's case, the Court found that some of these statements by judicial officers are remarkable, and that taken all together along with other well-pleaded facts, they nudge Osman's Fourth Amendment claim as to Weyker over the *Iqbal* plausibility line. The Court notes that none of these judicial statements refer even obliquely to Bandemer. The Court further found that the fact that Osman was also indicted on charges of obstruction of justice relating to the prosecution of the allegedly fabricated sex-trafficking-conspiracy case does not *per se* doom her Fourth Amendment claim. *See* Osman Op. 35-37. Yusuf's case, however, is different.

Weyker and Bandemer argue that even if Yusuf plausibly alleges that Weyker fabricated evidence material to the indictment for sex-trafficking-related charges, the fact that he was also indicted in a non-trafficking-related charge defeats his Fourth Amendment claim. Weyker and Bandemer argue that Yusuf fails to plausibly allege that there was not probable cause to arrest him on the other crime for which he was charged. *See* DOJ Br. 65-68. They point out in their reply papers that Yusuf and the other plaintiffs represented by the same counsel fail to address this argument at all. DOJ Reply 31-32.

Yusuf's complaint does not acknowledge that he was charged in Count 18 with a crime unconnected to any alleged sex-trafficking, and as noted, his opposition papers did not respond

12

to Weyker and Bandemer's argument that his Fourth Amendment claim fails in light of that count. Yusuf fails to plausibly allege—or even conclusorily state—that there was no probable cause to indict and arrest him in November 2010 on Count 18. He alleges no specific facts regarding fabricated evidence relating to Count 18. And although Yusuf is not charged with any specific acts in the Count 18 credit-card-fraud conspiracy, the grand jury's indictment of him on that charge "conclusively determines the existence of probable cause" on that count, *Kaley v. United States*, 134 S. Ct. 1090, 1097 (2014) (citation omitted), at least absent any allegations that the indictment on Count 18 was tainted by fabrication of evidence.[8] Yusuf's more general allegations cannot overcome the hurdle posed by his indictment in that count. He alleges that "[b]ut for the false testimony and other erroneous evidence falsely manufactured by Weyker and Bandemer, no probable cause existed to detain or otherwise restrict Yusuf's liberty." FAC ¶ 1. But he does not allege any facts to lend plausibility to this conclusory statement. The results of the trial on Counts 1, 2, 12, and 13 cannot reasonably be imputed to the separate charge in Count 18, on which Yusuf had been expected to stand trial separately after the district court ordered Count 18 and some other counts severed. In any event, Yusuf does not ask the Court to draw such an inference because he fails to acknowledge Count 18 at all.

Therefore, Yusuf's complaint must fail. Even if there were no probable cause to arrest him based on the allegedly spurious sex-trafficking-conspiracy charges, there is no Fourth Amendment violation where there is probable cause to arrest "for the violation of some other law." *Greenman*, 787 F.3d at 889 (citation omitted); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (holding that there is no Fourth Amendment violation if there is probable cause to

---

[8] The Court further notes that one of his co-defendants pleaded guilty to the credit-card conspiracy charged in Count 18. *See United States v. Nur*, No. 3:10cr260, Dkt. No. 2870 (M.D. Tenn. Oct. 5, 2012).

13

arrest based on any criminal offense, even if the officer's subjective reason for arresting was a different and unrelated offense); *Keil v. Triveline*, 661 F.3d 981, 986 (8th Cir. 2011). Yusuf "has failed to 'make out a violation of a constitutional right' in the first instance." *Greenman*, 787 F.3d at 888.

Defendants Weyker and Bandemer are entitled to qualified immunity. Yusuf has failed to plausibly allege a constitutional violation. Moreover, as to Bandemer, there are no well-pleaded facts that would support an inference that he directly fabricated evidence.[9]

### b. Supervisory Liability

Yusuf also sues Bandemer and John Does 3-4 in their individual capacities as supervisors. He alleges that they were deliberately indifferent to or authorized Weyker's and Bandemer's alleged violations of Yusuf's rights. *See* SAC ¶¶ 8, 46-47.

A supervisor sued in his or her individual capacity in a § 1983 or *Bivens* suit "is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677; *see also S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). "When a supervising official who had no direct participation in an alleged constitutional violation is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts." *Krigbaum*, 808 F.3d at 340 (citing *Livers*, 700 F.3d at 355). "This rigorous standard requires proof that the supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right. Allegations of generalized notice are insufficient." *Id.* The notice prong requires that "[t]o

---

[9] Yusuf's papers do not advance this argument, but to the extent one might argue that his pleadings can be construed as alleging a constitutional violation on the basis of a presumption of in-custody detention, the Court would reject this theory for the reasons given in the order filed simultaneously in *Jama v. Weyker, et al.*, No. 16cv1230, at pages 7-8.

14

impose supervisory liability, other misconduct [allegedly giving the supervisor notice] must be very similar to the conduct giving rise to liability." *Id.* (quoting *Livers*, 700 F.3d at 356).

First, given the Court's conclusion that Yusuf has not adequately alleged a constitutional violation by Weyker or Bandemer, the supervisory liability claims "automatically fail for lack of an underlying constitutional violation." *Mendoza v. U.S. Immig'n & Customs Enf't*, 849 F.3d 408, 420 (8th Cir. 2017) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986)).

Moreover, Yusuf's complaint, which is very similar to Osman's complaint as to the supervisory liability allegations, likewise contains insufficient well-pleaded facts regarding supervisory liability. Like Osman, he alleges that Bandemer and the John Does had supervisory responsibility over Weyker, *see, e.g.*, SAC ¶ 46; that the investigation was very important to the St. Paul Police Department vice unit, SAC ¶ 14; and that "[b]y at least February 15, 2012, these [supervisory] defendants had actual knowledge" of Weyker's fabrications based on a February 2012 memorandum-order at Dkt. No. 1392 and other district court orders, *id.* ¶¶ 44-45, 47. Like Osman, Yusuf cites *United States v. Mohamud*, No. 3:10cr260, 2013 WL 1935506, at *11 n. 6 (M.D. Tenn. May 9, 2013), and *United States v. Adan*, 913 F. Supp. 2d 555, 589 n.10 (M.D. Tenn. Dec. 19, 2012), in support of his supervisory liability notice allegations. SAC ¶¶ 44-45.

As explained in the Osman Opinion, these allegations do not sufficiently plead supervisory liability based on notice. *See* Osman Op. 37-41. Nor do they establish a pattern of unconstitutional acts by Weyker. Ignoring conclusory or unsupported allegations, Yusuf does not allege any other similar acts by Weyker or Bandemer before the Tennessee Case investigation that could show a pattern about which Bandemer (as Weyker's supervisor) or the John Does (as Weyker's and/or Bandemer's supervisors) personally knew.

15

The allegations fail to state a claim for supervisory liability, and Bandemer and John Does 3-4 are entitled to qualified immunity as to these counts.

### c. Municipal Liability

Yusuf sues St. Paul as well as Bandemer and the John Does in their official capacities for municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. "Instead," a municipality is liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Id.*

A plaintiff therefore must show that there is an "official" policy or a "custom or usage with the force of law." *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). A plaintiff must plead "allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citation omitted). "Misconduct among a municipality's employees must be 'continuing, widespread, [and] persistent' to establish such a custom." *Kelly*, 813 F.3d at 1075 (citation omitted). Also, "the municipality will not be liable unless policymaking officials exhibit '[d]eliberate indifference to or tacit authorization of such conduct . . . after notice to the officials of that misconduct." *Id.* at 1075-76 (citation omitted). The question is whether a "governmental policy or custom was the 'moving force' that led to the deprivation of [the plaintiff's] constitutional rights." *Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002). Even if no individual employee is found liable, a municipality might be liable, but only where "the combined actions of multiple officials or employees may give rise to a constitutional violation." *Id.*

16

Yusuf does not adequately support his conclusory municipal liability allegations. He does not allege with well-pleaded facts that Weyker or other St. Paul Police Department employees fabricated evidence in other investigations, nor that policymaking officials in the department were aware of any previous incidents of fabrication of evidence. He does not allege well-pleaded facts to support a theory that multiple St. Paul Police Department members—not even Weyker and Bandemer—combined to violate his rights. Nor does he allege facts that would demonstrate an official department *policy* that moved officers to fabricate evidence or coerce witnesses and mislead prosecutors and grand juries to secure indictments. He also does not plausibly allege any such *custom* because, among other reasons, he has not adequately alleged notice, as explained above. The supervisory defendants sued in their official capacities, and the City of St. Paul, are entitled to qualified immunity on these claims.

## VI. Conclusion

Defendants are entitled to qualified immunity on all counts, because Yusuf's complaint fails to plausibly allege a violation of his constitutional rights. The Court grants the Defendants' motions and dismisses with prejudice. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1060-61 (8th Cir. 2013); *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 635 (8th Cir. 2010).

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants Heather Weyker and John Bandemer's Motion to Dismiss [Dkt. No. 41] is GRANTED.

2. Defendant City of Saint Paul's Motion for Judgment on the Pleadings [Dkt. No. 47] is GRANTED.

3. Plaintiff Yassin Abdirahman Yusuf's Second Amended Complaint is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

17

Dated: August 9, 2017                                    s/ Joan N. Ericksen
                                                         JOAN N. ERICKSEN
                                                         United States District Judge